# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

VINCENT G. WILLIAMS et al.,

                Plaintiffs,

      v.

SUMMIT MARINE, INC. et al,

                Defendants,

SUMMIT MARINE, INC.,

                Third-Party Plaintiff /
                Cross-Claimant,

      v.

JOEL POTGETER et al.,

                Third-Party Defendants /
                Cross-Defendants.

5:18-cv-216
(GLS/ATB)

_____

APPEARANCES:                OF COUNSEL:

**FOR THE PLAINTIFFS:**
Bottar, Leone Law Firm      ANTHONY S. BOTTAR, ESQ.
120 Madison Street          SAMANTHA C. RIGGI, ESQ.
Suite 1600
AXA Tower II - 16th Floor
Syracuse, NY 13202

**FOR THE DEFENDANTS:**
*Summit Marine, Inc.*
Vigorito, Barker, Patterson, Nichols    GREGG D. WEINSTOCK, ESQ.
& Porter LLP
300 Garden City Plaza

Suite 308
Garden City, NY 11530

*Joel Potgeter & Automated*
*Innovations & Machining, LLC.*
Roemer Wallens Gold & Mineaux LLP    MATTHEW J. KELLY, ESQ.
13 Columbia Circle
Albany, NY 12203

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

This action involves an allegedly faulty boat lift that injured plaintiffs Vincent and Trajanka Williams.  (Am. Compl., Dkt. No. 21.)  Plaintiffs blame the boat lift manufacturer, Summit Marine, Inc., the component part manufacturer, Automated Innovations and Machining, LLC, and its president, Joel Potgeter (hereinafter "Automated defendants").  (*Id.*)  Summit Marine blames Automated defendants.  (Dkt. No. 14.)  Pending is Automated defendants' motion to dismiss for lack of personal jurisdiction, (Dkt. No. 29), which is granted for the following reasons.

### II. Background

## A.    <u>Facts</u>[1]

On September 18, 2016, Vincent Williams was using a boat lift in Clayton, New York "when [it] malfunctioned, causing him severe, permanent[,] and disabling injuries."  (Dkt. No. 14 at 18; Am. Compl. ¶ 11.)  Consequently, Vincent's wife, Trajanka, suffered a "loss of services, society, companionship[,] and consortium."  (Am. Compl. ¶¶ 2, 78.)

Summit Marine, a foreign corporation authorized to do business in New York with a principle place of business in Michigan, was responsible for "designing, manufacturing, testing, marketing, producing, distributing, selling[,] and delivering" the boat lift, (*id.* ¶¶ 3, 4), which was manufactured in Michigan, (Dkt. No. 30, Attachs. 1 at 5 ¶ 7, 2 ¶ 7).  "[T]he defective nature of the boat lift existed at the time the boat lift left control of Summit [Marine] and/or was introduced into the stream of commerce by Summit [Marine]."  (Am. Compl. ¶ 25.)

At all times relevant to this action, Potgeter was the president of Automated, a limited liability company organized under the laws of

---

[1] Unless otherwise noted, the facts are drawn from plaintiffs' amended complaint as well as Summit Marine's third-party complaint and presented in the light most favorable to them.

Michigan, which was allegedly authorized and/or licensed to conduct business in New York and "was and is doing business within . . . New York."[2]  (Dkt. No. 14 ¶¶ 2-6; Am. Compl. ¶¶ 5-10; Dkt. No. 29, Attach. 8 ¶ 4.)  Automated contracted with Summit Marine to provide them with a limited number of component parts but was not Summit Marine's exclusive provider.  (Dkt. No. 29, Attach. 8 ¶¶ 4, 12, 14.)  Nonetheless, Automated allegedly "designed, manufactured, tested, marketed, distributed, sold[,] or delivered the winch brake of the boat lift."  (Dkt. No. 14 ¶ 12; Am. Compl. ¶ 5.)  However, Automated never entered New York for any business purpose, including advertising.  (Dkt. No. 29, Attach. 8 ¶ 19.)

## B.  **Procedural History**

Plaintiffs removed this action from New York Supreme Court on February 16, 2018.  (Dkt. No. 1.)  Their original complaint named only

---

[2] Potgeter attests that he never transacted business in New York and Automated was not licensed to do business in New York.  (*Compare* Dkt. No. 29, Attach. 8 ¶¶ 18, 20, *with* Dkt. No. 14 ¶¶ 2-6; Am. Compl. ¶¶ 5-10.)  However, at this stage, an affidavit may not be used to controvert the pleadings.  *See infra* Part III.  And the court declines Automated defendants' invitation to convert their motion to dismiss into one for summary judgment.  *See Islip U-Slip LLC v. Gander Mountain Co.*, 2 F. Supp. 3d 296, 305 (N.D.N.Y. 2014) (denying request for conversion where unlikely to facilitate disposition of action).

Summit Marine and asserted claims of negligence, strict products liability, breach of warranty, and loss of consortium.  (Compl. ¶¶ 6, 11, 16, 18, Dkt. No. 2.)  On October 15, 2018, after limited discovery, Summit Marine filed a third-party complaint, which sought indemnification and/or contribution from Automated defendants.  (Dkt. No. 14 ¶¶ 14, 16, 18, 20; Text Minute Entry of July 16, 2018; Text Minute Entry of Sept. 17, 2018.)  Thereafter, plaintiffs filed an amended complaint, which asserts claims of negligence, strict products liability, breach of warranty, and loss of consortium against Summit Marine and Automated defendants.  (Am. Compl. ¶¶ 16-79.)  In turn, Summit Marine filed a cross-claim against Automated defendants. (Dkt. No. 23.)

Automated defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) followed.  (Dkt. No. 29.)  The March 1, 2019 discovery deadline, (Dkt. No. 11 at 1), was stayed on February 7, 2019 pending resolution of the motion, (Dkt. No. 39).

### III.  **Standard of Review**

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *Bank Brussels Lambert v.*

5

*Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (internal citation omitted).  In assessing such a motion, a court may consider materials outside the pleadings.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ*, 722 F.3d 81, 86 (2d Cir. 2013); *see also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("[A] district court has considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.") (collecting cases).  However, prior to the completion of discovery, "the plaintiff's *prima facie* showing [of personal jurisdiction] may be established solely by allegations."  *Dorchester*, 722 F.3d at 84, 86 (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (rejecting proposition that defendant may, on a Rule 12(b)(2) motion, refute plaintiff's unsupported allegations with specific testimonial evidence regarding fact essential to personal jurisdiction)); *see Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70 (E.D.N.Y. 2006) ("Plaintiffs may rely entirely on allegations of fact, and they will prevail even if the moving party makes contrary allegations which controvert their prima facie case.") (internal quotation marks and citations omitted).

In deciding whether a plaintiff has made a prima facie showing of jurisdiction, the court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and citation omitted). However, the plaintiff "must make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone." *Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (internal quotation marks and citation omitted); *see DeLorenzo v. Ricketts & Assocs., Ltd.*, 15-CV-2506, 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017) ("[C]onclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction.") (internal quotation marks and citations omitted); *SODEPAC, S.A. v. CHOYANG PARK*, No. 02 Civ. 3927, 2002 WL 31296341, at *5 (S.D.N.Y. Oct. 10, 2002) ("Vague and generalized allegations . . . are insufficient to make a prima facie showing of jurisdiction over an out-of-state defendant.") (internal citations omitted).

## IV. Discussion

### A. Personal Jurisdiction

7

To make a prima facie showing of personal jurisdiction, a plaintiff must demonstrate: (1) procedurally proper service of process upon the defendant; (2) "a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) that the exercise of personal jurisdiction comports with constitutional due process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012). Here, Automated defendants challenge whether personal jurisdiction comports with New York's long-arm statute and due process requirements.[3] (Dkt. No. 29, Attach. 13 at 4-17.)

### 1. N.Y. C.P.L.R. 302(a)(1)

N.Y. C.P.L.R. 302 (a)(1) states, in pertinent part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." "This rule provides two distinct grounds for long-arm jurisdiction: where a defendant

---

[3] The court confines its analysis to N.Y. C.P.L.R. 302(a)(1) and (a)(3)(ii) because those are the only provisions that Summit Marine addresses in response to Automated defendants' arguments. (Dkt. No. 29, Attach. 13 at 5-7; Dkt. No. 31, Attach. 1 at 5, 8.)

'transacts any business' in the state and where a defendant 'contracts anywhere to supply goods or services' in the state." *D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 297 (2017). Under either ground, (1) "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State by either transacting business in New York or contracting to supply goods or services in New York" and (2) "the claim must arise from that business transaction or from the contract to supply goods or services." *Id.* (internal quotation marks and citation omitted); *see Kreutter v McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) ("[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (citations omitted). Under the second prong, plaintiff's claim must have an "articulable nexus" or "substantial relationship" with the defendant's transaction of business in New York. *D&R Global Selections*, 29 N.Y.3d at 298-99 (quoting *Licci v Lebanese Canadian Bank*, SAL, 20 N.Y.3d 327, 339 (2012)). "At the very least, there must be a relatedness between the transaction and the legal claim such that the latter is not

9

completely unmoored from the former[.]" *Id.* at 299 (internal quotation marks and citation omitted); *cf. Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773, 1780 (2017) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (internal quotation marks and citation omitted). "[A]n articulable nexus or substantial relationship exists where at least one element arises from the New York contacts"; however, "[t]he nexus is insufficient where the relationship between the claim and transaction is too attenuated or merely coincidental." *D&R Global Selections*, 29 N.Y.3d at 299 (internal quotation marks and citations omitted).

Summit Marine argues that N.Y. C.P.L.R. 302(a)(1) is satisfied because "[i]t is plausible that [Automated] [d]efendants . . . contracted to have [their] products sold in New York, as the subject boat lift . . . was located in New York at the time of the alleged accident." (Dkt. No. 31, Attach. 1 at 9.) However, Summit Marine stops short of pointing to factual allegations that articulate a nexus between its claims and Automated defendants' New York contacts. To be sure, the pleadings contain no allegations that Automated designed, manufactured, or tested winch

brakes for the New York market or "marketed, distributed, sold, or delivered" them to New York consumers.   (*See generally* Dkt. No. 14; Am. Compl.)  In fact, there are no allegations pertaining to the location of any of Automated defendants' conduct associated with winch brakes, let alone the winch brake at issue.  (*Id.*)  Moreover, there are no allegations from which it can be reasonably inferred that Automated defendants targeted the New York market or knew that boat lifts comprised of their winch brakes were being sold to New York consumers.  Further, Summit Marine does not point to a single aspect of its claims that arises from Automated defendants' New York contacts.

Without alleging more than "[Automated] was and is doing business within . . . New York," (Am. Compl. ¶ 9), it cannot be reasonably inferred that there was a substantial relationship between any business transacted by Automated defendants and the claims asserted.  *See D&R Global Selections*, 29 N.Y.3d at 299.  Accordingly, plaintiffs and Summit Marine fail to satisfy their burden of making a prima facie showing of personal jurisdiction under N.Y. C.P.L.R. 302(a)(1).

2.     *N.Y. C.P.L.R. 302(a)(3)(ii)*

The conferral of jurisdiction under [N.Y. C.P.L.R. 302(a)(3)(ii)]

11

rests on five elements: [1], that defendant committed a tortious act outside the State; [2], that the cause of action arises from that act; [3], that the act caused injury to a person or property within the State; [4], that defendant expected or should reasonably have expected the act to have consequences in the State; and [5], that defendant derived substantial revenue from interstate or international commerce.

*LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).  The parties

primarily dispute whether Automated defendants expected or should have

reasonably expected their alleged tortious act to have consequences in

New York, (Dkt. No. 29, Attach. 13 at 7-10; Dkt. No. 31, Attach. 1 at 6-8),

which is an issue that implicates due process considerations, *see*

*Williams v Beemiller, Inc.*, 159 A.D.3d 148, 156 (4th Dep't 2018).

    "A non-domiciliary tortfeasor has minimum contacts with the forum

State—and may thus reasonably foresee the prospect of defending a suit

there—if [he or she] purposefully avails [himself or herself] of the privilege

of conducting activities within the forum State."  *LaMarca*, 95 N.Y.2d at

216 (internal quotation marks and citations omitted).  "[T]he foreseeability

that is critical to due process analysis is not the mere likelihood that a

product will find its way into the forum State[;] . . . it is that the defendant's

conduct and connection with the forum State are such that he should

reasonably anticipate being haled into court there."  *World-Wide*

12

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal citations omitted).  As such, the analysis "focuses on the relationship among the defendant, the forum, and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks and citations omitted). And that relationship "must arise out of contacts that the defendant *himself* creates with the forum State."  *Id.* (internal quotation marks and citation omitted); *see Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.") (internal citations omitted).

Here, the boat lift at issue was manufactured by Summit Marine in Michigan.  (Dkt. No. 30, Attachs. 1 at 5 ¶ 7, 2 ¶ 7.)  The alleged defect in the component part existed at the time Summit Marine placed the finished boat lift into the stream of commerce.  (Am. Compl. ¶ 25.)  Even accepting, as the court must, that Automated defendants conducted business in New York and "designed, manufactured, tested, marketed, distributed, sold, or delivered the winch brake of the boat lift," (Dkt. No. 14 ¶¶ 6, 12), neither plaintiffs nor Summit Marine point to anything in the

record from which it can be reasonably inferred that this litigation arises from Automated defendants' purposeful availment of its New York contacts.  Summit Marine's reasoning—that there is personal jurisdiction because Automated defendants "knew or reasonably should have known that these parts could, at some point, be sold outside of . . . Michigan . . . [and] that a defect in [their] parts sold [to] a consumer outside of . . . Michigan would have direct consequences in that state," (Dkt. No. 31, Attach. 1 at 7)—is insufficient.

There is nothing in the pleadings from which it can be reasonably inferred that Automated defendants expected or should have reasonably expected that component parts it sold in Michigan would later be sold in finished products in New York.  First, as previously discussed, there are no allegations regarding the relationship between Automated defendants' unidentified business in New York and this litigation.  *See Bristol-Myers Squibb Co.*, 137 S.Ct. at 1781 ("For specific jurisdiction, a defendant's general connections with the forum are not enough.").  Automated defendants did not transact business with plaintiffs directly, did not advertise in New York, and did not enter New York for any other business purpose.  (Dkt. No. 29, Attach. 8 ¶¶ 12, 19.)  Furthermore, there are no

allegations from which it can be reasonably inferred that Automated

defendants knew that Summit Marine marketed or sold boat lifts in New

York.

Summit Marine's argument that because Automated defendants

"chose to sell [their] products in the United States, the exercise of

personal jurisdiction over [them] is not only lawful, but should have been

expected," (Dkt. No. 31, Attach. 1 at 12), misses the mark.

"[F]oreseeability alone has never been a sufficient benchmark for personal

jurisdiction[.]" *World–Wide Volkswagen*, 444 U.S. at 295 (internal

quotation marks omitted).  Even under Justice Brennan's broad stream of

commerce theory, as outlined in his *Asahi* concurrence, a defendant must

at least have knowledge that the product placed in the stream of

commerce is being marketed in the forum state.  *See Asahi Metal Indus.*

*Co. v. Superior Court of Cal.*, 480 U.S. 102, 117 (1987) (Brennan, J.,

concurring).

> [A] defendant's placing goods into the stream of commerce with
> the expectation that they will be purchased by consumers within
> the forum State may indicate purposeful availment.  But that
> statement does not amend the general rule of personal
> jurisdiction.  It merely observes that a defendant may in an
> appropriate case be subject to jurisdiction without entering the
> forum . . . as where manufacturers or distributors seek to serve

a given State's market.

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881-82 (2011) (plurality opinion) (internal quotation marks and citation omitted); *cf. City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 149 (2d Cir. 2011) ("[A] 'defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.'") (quoting *Asahi*, 480 U.S. at 112).

Accordingly, neither plaintiffs nor Summit Marine has made a prima facie showing of personal jurisdiction over Automated defendants.[4]

## B.   Jurisdictional Discovery

Alternatively, plaintiffs and Summit Marine argue that Automated defendants' motion should be denied until after completion of discovery on the issue of personal jurisdiction.  (Dkt. No. 31, Attach. 1 at 13-15; Dkt.

---

[4] Given that there is no personal jurisdiction over Automated defendants, the court will not consider Automated defendants' alternative legal arguments.  *Cf. Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

No. 30, Attach. 4 at 1-3.)  Summit Marine asserts that discovery "is expected to lead to additional information regarding [Automated] [d]efendants' . . . contacts with customers in . . . New York," and "[Automated] [d]efendants . . . may have contracted to supply goods to a consumer in New York."  (Dkt. No. 31, Attach. 1 at 14.)  Plaintiffs contend that granting the motion before any depositions would "depriv[e] [them] of an opportunity to conduct any meaningful discovery regarding [Automated] defendants' interactions with New York and their design, production, manufacturing, testing, marketing, distribution, sale[,] and delivery" of the component parts at issue.  (Dkt. No. 30, Attach. 4 at 2.)

"A party seeking jurisdictional discovery . . . bears the burden of showing necessity."  *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp.3d 416, 432 (S.D.N.Y. 2018), *appeal filed* No. 18-1264 (2d Cir. Apr. 26, 2018) (internal quotation marks and citation omitted).  The court is mindful that personal jurisdiction inquiries are "necessarily fact sensitive because each case is dependent upon its own particular circumstances," *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks and citation omitted), and "court[s] should take care to give the plaintiff ample opportunity to secure and present evidence

relevant to the existence of jurisdiction," *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citation omitted).  As such, courts in the District have allowed jurisdictional discovery "[e]ven if [p]laintiffs fail to make a prima facie showing of personal jurisdiction . . . so long as [p]laintiffs have 'made a sufficient start towards establishing personal jurisdiction.'"  *Perkins v. Sunbelt Rentals, Inc.*, 5:14-CV-1378, 2015 WL 12748009, at *4 (N.D.N.Y. Aug. 13, 2015) (quoting *Hollins*, 469 F. Supp. 2d at 70-71).  Still, "[p]laintiffs must make a threshold showing that discovery might uncover a basis for jurisdiction."  *PST Servs., Inc. v. Larson*, 221 F.R.D. 33, 37 (N.D.N.Y. 2004) (internal quotation marks and citation omitted); *see Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 315 (S.D.N.Y. 2015) ("'Discovery need not be granted to allow a plaintiff to engage in an unfounded fishing expedition for jurisdictional facts.'") (quoting *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10–CV–1777, 2011 WL 381612, at *10 (E.D.N.Y. Feb. 2, 2011)); *compare In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (allowing jurisdictional discovery where allegations constituted "arguabl[e]" jurisdictional basis), *with Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (affirming denial of discovery

request where there were only "conclusory non-fact-specific jurisdictional allegations"). Ultimately, whether to grant jurisdictional discovery when plaintiffs fail to make a prima facie showing of personal jurisdiction is within the court's discretion. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007).

As explained above, despite limited discovery, plaintiffs and Summit Marine have not made a prima facie showing of personal jurisdiction. Given the vague and conclusory nature of their sparse allegations, they have not even made a sufficient start towards establishing jurisdiction. *See Jazini*, 148 F.3d at 185. Their arguments regarding what further discovery might uncover are unavailing because they fail to explain how any additional contacts that may be uncovered would be sufficiently related to this suit. Even assuming that further discovery would reveal that "[Automated] [d]efendants . . . contracted to supply goods to *a* consumer in New York," (Dkt. No. 31, Attach. 1 at 14) (emphasis added), this unconnected conduct would still not support the exercise of specific jurisdiction.[5] *See Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780-81. The

---

[5] Nothing about the allegations or the parties' arguments suggests that discovery might yield facts to support the exercise of general jurisdiction over Automated defendants. *See Bristol-Myers Squibb Co.*,

remainder of the parties' arguments offer only rank speculation and fail to make a threshold showing that discovery would bear fruit. *See Larson*, 221 F.R.D. at 37; *Vista Food Exch.*, 124 F. Supp. 3d at 315. Accordingly, plaintiffs' and Summit Marine's requests for jurisdictional discovery are denied.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Automated defendants' motion to dismiss (Dkt. No. 29) is **GRANTED**; and it is further

**ORDERED** that the third-party complaint (Dkt. No. 14) is **DISMISSED**; and it is further

**ORDERED** that plaintiffs' claims against Automated defendants (Am. Compl. ¶¶ 48-79) are **DISMISSED**; and it is further

**ORDERED** that the Clerk terminate Joel Potgeter and Automated Innovations and Machining, LLC as parties to this action; and it is further

**ORDERED** that the remaining parties shall contact Magistrate Judge Andrew T. Baxter to schedule further proceedings in accordance

---

137 S.Ct. at 1779 (comparing general and specific jurisdiction).

with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 30, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge